**Robert REED, Plaintiff–Appellant,**

v.

**Daniel HOY; Douglas County; Douglas County Sheriff's Office, Defendants–Appellees.**

No. 87–4324.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Dec. 15, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc July 18, 1990.

Dwayne R. Murray, Bischoff & Strooband, P.C., Eugene, Or., for plaintiff-appellant.

Robert E. Franz, Jr., Eugene, Or., for defendants-appellees.

Before BROWNING, WALLACE and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiff Robert Reed brought an action against Deputy Daniel Hoy and Douglas County, alleging that his constitutional rights were violated by Hoy's use of excessive force. After a full trial, the jury found for the defendants. Reed appeals, alleging various errors in jury instructions and admission of evidence. We reverse and remand.

**325**

I.

FACTS AND PROCEEDINGS BELOW

On August 18, 1984, Deputy Daniel Hoy was dispatched to the residence of plaintiff Robert Reed to investigate a reported domestic disturbance. When Hoy arrived at Reed's house, Reed was crouched outside the house, with his back to Hoy. Hoy greeted Reed, and informed Reed that he was investigating a possible crime. Hoy asked if he could speak to Mrs. Reed. Reed angrily replied that his wife did not want to speak to Hoy and told Hoy "to get the hell off [his] property." Hoy then stated that he was investigating a possible family disturbance and indicated that he would leave as soon as he spoke to Mrs. Reed.

After a further brief, verbal exchange, Reed picked up a 36-inch bamboo stick used to stake flowers, and again demanded that Hoy leave the premises. In response, Hoy drew his nightstick. Hoy again requested to see Mrs. Reed. Reed walked to the porch, put down the bamboo stick, and picked up a splitting maul. He advanced toward Hoy, again demanding that Hoy leave his property. Reed testified that he was very angry and that his purpose was to scare Hoy. Hoy retreated, walking backwards. He told Reed to put down the maul, but Reed refused.

Hoy continued walking backwards, and Reed continued to advance, closing the distance between the two. Hoy again asked Reed to put down the maul. When Reed refused and continued to advance toward him, Hoy drew his service revolver and pointed it at Reed, again requesting that Reed put down the maul. Hoy testified that Reed continued to advance, grabbing the maul with both hands, and raising it in a threatening manner. Hoy then shot Reed in the chest. Reed filed this action under 42 U.S.C. § 1983, alleging that Hoy used excessive force, violating Reed's constitutional rights. Reed also alleged that the County was liable for failure to train Hoy adequately in the use of force. The jury ruled in favor of the defendants. Reed appeals, alleging several errors in the

conduct of the trial. We have jurisdiction under 28 U.S.C. § 1291.

## II.

## STANDARD OF REVIEW

We review jury instructions to determine whether, taken as a whole, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986). So long as they do not, we review the formulation of the instructions and the choice of language for abuse of discretion. *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985).

## III.

## DISCUSSION

A. The *Rinker* Instruction

Reed argues that the district court incorrectly instructed the jury on the level of culpability necessary to find that Hoy violated Reed's constitutional rights. The instruction to which Reed objects reads as follows:

Now, in order for the Plaintiff to prevail in this matter on his due process claim against the Defendants the Plaintiff must prove by a preponderance of the evidence that the shooting of Plaintiff by ... Deputy Hoy was *intentional, unjustified, unprovoked, and brutal.*

In other words you are to decide whether Deputy Hoy shot the Plaintiff in a good faith effort to protect himself or did so *maliciously and for the very purpose of injuring the Plaintiff.*

Reporter's Transcript (RT) at 417 (emphasis added).[1] The instruction given by the district court was based on language in *Rinker v. County of Napa*, 820 F.2d 295, *opinion withdrawn, substituted opinion*

*on reh'g*, 831 F.2d 829, 831–32 (9th Cir. 1987).

In *Rinker*, the plaintiff sued a police officer who had shot him in the face during a raid of his apartment. Viewing Rinker's action as one invoking substantive due process, we held that Rinker could establish a substantive due process violation only if the force applied to the defendant was applied "maliciously and sadistically for the very purpose of causing harm." 831 F.2d at 831–32 (quoting *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Unfortunately, the *Rinker* instruction given by the district court is inconsistent with the standards recently enunciated by the Supreme Court for evaluating the constitutionality of a law enforcement official's use of force to subdue a citizen. *See Graham v. Connor*, — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In *Graham*, a police officer stopped plaintiff Graham because he suspected that Graham may have robbed a convenience store. However, Graham had merely hurriedly entered and left the store in an effort to obtain fruit juice in order to alleviate a diabetic condition. The officer instructed Graham to wait while he checked to see if the store had been robbed. Graham, suffering an insulin reaction, began behaving strangely, then passed out. While he was unconscious, backup officers cuffed his hands tightly behind his back. When he regained consciousness and attempted to explain his condition to the officers and direct their attention to a diabetic decal that he carried in his wallet, one of them told him to shut up, and slammed his head against a car. Four officers then shoved him head first into a police car. When a friend of Graham's brought fruit juice to the car, they refused to let him drink it. Eventually, the officers learned that there had been no robbery and re-

---

**1.** The district court refused to give Reed's proposed alternative instruction, Requested Jury Instruction No. 8, which reads:

A person has the right to be free from excessive force. An officer is entitled to use such force as a reasonable person would think is required to accomplish lawful objectives. However, an officer is not allowed to use any force

beyond that reasonably necessary to accomplish his lawful purpose. Thus, if you find that the defendant used *greater force than was reasonably necessary in the circumstances of this case*, you must find that the defendant is liable for a violation of the plaintiff's constitutional rights. Clerk's Record (CR), Tab 27 at 13 (emphasis added).

leased Graham. However, during his brief encounter with the police, Graham suffered a broken foot, cuts on his wrists, a head injury, and a shoulder injury. He brought an action under 42 U.S.C. § 1983, alleging that the officers' use of force was in violation of " 'rights secured to him under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.' " *Id.* 109 S.Ct. at 1868 (quoting Graham's complaint, ¶ 10).

Finding, *inter alia,* that the defendants applied the force in good faith and not "maliciously or sadistically for the very purpose of causing harm," the district court directed a verdict for the defendants; and a divided panel of the Fourth Circuit affirmed. *Graham v. City of Charlotte,* 827 F.2d 945 (4th Cir.1987). The Supreme Court reversed.

The Court first noted that a majority of the lower federal courts apply the *Johnson v. Glick* test to all excessive force claims against law enforcement officials. *Graham,* 109 S.Ct. at 1870. The Court condemned this practice, pointing out that section 1983 analysis must begin by analyzing the specific constitutional right allegedly infringed by the challenged application of force. *Id.* The Court then concluded that the fourth amendment is the specific constitutional provision governing the right of free citizens to be free from law enforcement officials' use of excessive force in the context of an arrest or investigatory stop. *Id.* at 1871 ("*all* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"). The Court pointed out that the *Johnson v. Glick* analysis, which turns in part on the subjective intent of the officers, is inappropriate in the fourth amendment context. *Id.* at 1872. As the Court noted, "[t]he Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Id.* at 1873.

If the fourth amendment analysis of *Graham* applies to this case, the *Rinker* instruction was inappropriate. In order to apply *Graham* to this case, we must determine that (1) *Graham* should be applied retroactively, and (2) Hoy's allegedly excessive use of force occurred in the context of a "seizure," triggering the protection of the fourth amendment.

### 1. Retroactive Application of *Graham*

█ Our circuit recognizes that ordinarily a decision reformulating federal civil law will be applied retroactively. *Austin v. City of Bisbee,* 855 F.2d 1429, 1432 (9th Cir.1988). In certain cases, however, retroactive application of the new case law will produce inequitable results; and the new rules will be applied prospectively only. In determining whether a decision should be applied prospectively, a court must consider three factors as set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971): whether the decision.

(1) establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;

(2) state[s] a rule whose retrospective operation will retard more than further its operation, considering the rule's prior history and its purpose and effect;

(3) [is] a decision whose retroactive application could produce substantial inequitable results, and for which a holding of nonretroactivity would avoid injustice or hardship.

*Austin,* 855 F.2d at 1432–33 (citing *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56).

*Graham* clearly overrules past Ninth Circuit precedent. *See, e.g., Rinker,* 831 F.2d at 831–32. However, the Supreme Court stated in *Graham:*

Today we make explicit what was implicit in *Garner's* analysis and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investi-

gatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. . . .

*Graham*, 109 S.Ct. at 1871 (*citing Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Thus, the Supreme Court does not view its decision as establishing a new principle of law.

In addition, retroactive application will further, not retard, the policies embodied in *Graham*. *Graham's* application of an objective reasonableness standard furthers the essential purposes of the fourth amendment—guaranteeing that free citizens are " 'secure in their persons ... against *unreasonable* ... seizures' of the person." *Graham*, 109 S.Ct. at 1871 (emphasis added). Conditioning liability for the use of excessive force upon a showing that the force was intentional, unprovoked and brutal would frustrate rather than further the purposes of the fourth amendment and the *Graham* rule.

Finally, retroactive application will impose no substantial inequities. The paradigm case in which we have found "substantial inequitable results" is one in which the new rule consists of a shortened statute of limitations. *See, e.g., Gibson v. United States*, 781 F.2d 1334, 1339–40 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *Barina v. Gulf Trading & Transp. Co.*, 726 F.2d 560, 562–64 (9th Cir.1984). In such cases, retroactive application of the new rule would violate a party's reasonable expectations upon which the timing of its filing was based and act to bar potentially valid civil claims. Similarly, in *Austin*, 855 F.2d at 1433–34, we held that the rule of *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), extending the protection of the Fair Labor Standards Act (FLSA) to all state and local government employees, should not be applied retroactively. In *Austin*, as in other retroactivity cases, the key to finding "substantial inequitable results" is a party's reasonable reliance on a rule of law that was later invalidated. *Austin*, at 885 F.2d 1433 ("A retroactive application of *Garcia* would punish the City of Bisbee for structuring its employment contracts according to the 'clear past precedent' that was controlling when the contracts were entered into.").

The concerns underlying our decisions in *Gibson*, *Barina*, and *Austin* are not present in this case. It is extremely unlikely that the conduct of Hoy or of Douglas County was influenced in any way by concerns about whether or not any potential civil liability for law enforcement officials' use of force against citizens is evaluated under the standards set out in *Rinker*.

In many respects, the retroactivity issue in this case resembles that in *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1494–95 (9th Cir.1986). In *Gilchrist*, the defendant appealed an award of damages for "willful" conduct under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. The jury instructions defining "willful" were erroneous in light of the subsequent Supreme Court decision in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). In *Gilchrist*, we determined that *Thurston* should apply retroactively.

In this case, as in *Gilchrist*, the jury instructions in a civil trial were revealed to be erroneous by a subsequent Supreme Court decision. In each case the Supreme Court decision was arguably a clear break from past circuit precedent. However, in each case the purpose of the Supreme Court's newly articulated legal rule is furthered by retroactive application; and in each case the parties' underlying conduct was not directly influenced by the prior law. On balance, in this case, as in *Gilchrist*, the *Chevron* factors favor retroactive application of *Graham*.[2]

2. Applicability of Fourth Amendment Analysis

■ We recognize that *Graham's* "objective reasonableness" standard is applica-

---

**2.** We also note that the Second Circuit, without analysis, applied *Graham* retroactively in *Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir.1989).

ble only when the allegedly excessive force is used in the context of a "seizure" within the meaning of the fourth amendment. *Graham,* 109 S.Ct. at 1871. We hold that the "seizure" requirement was satisfied by Hoy's shooting of Reed.[3]

The Supreme Court stated in *Garner* that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 471 U.S. at 7, 105 S.Ct. at 1699; Hoy contends that *Garner* is limited to situations in which deadly force is used as a means to effectuate an arrest. We reject this argument. The Supreme Court's language in *Garner* and particularly in *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), suggests that it takes a broader view of what constitutes a seizure.

In *Brower,* the Court stated that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." 109 S.Ct. at 1381. It then stated that a fourth amendment seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* Applying these standards, the Court held that the County's termination of the decedent's movement occurring as a result of his physical impact with the County's roadblock was a seizure. *Id.* at 1382–83.

■ Under the Supreme Court's *Brower* analysis, Hoy's shooting of Reed was a seizure within the meaning of the fourth amendment. The *Brower* analysis breaks down into a three-part test: a seizure is a (1) governmental (2) termination of freedom of movement (3) through means intentionally applied. There is no dispute that the first part is satisfied: Hoy is a government actor for purposes of the fourth amendment. Hoy's shooting of Reed satisfied the second factor as well. Clearly Reed's freedom of movement was terminat-

ed as a result of the discharge of Hoy's weapon, just as Brower's freedom of movement was terminated by the County's roadblock. Finally, the third element of the *Brower* test is also satisfied. It is not disputed that Hoy intended to shoot Reed when he discharged the revolver, and that the shooting was intended to stop Reed's freedom to continue to advance toward Hoy. *See id.* at 1382 ("We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place to accomplish that result.").

■ In short, whether the application of deadly force is for the purpose of effectuating an arrest or other stop, or for the purpose of self-defense, it is an acquisition of physical control by a law enforcement official that implicates the victim's fourth amendment interest to be free from unreasonable seizures. Thus, whether the use of deadly force in a particular case is constitutional depends upon whether the use of such force was reasonable under the circumstances. *Graham,* 109 S.Ct. at 1871.

3. Application of *Graham* Analysis to this Case

■ It is clear that under *Graham,* excessive force claims arising before or during arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the substantive due process standard embodied in the *Rinker* instruction. *Graham,* 109 S.Ct. at 1871; *id.* at 1873–74 (Blackmun, J., concurring in part). These standards differ dramatically. In *Miller v. Lovett,* a recent excessive force case arising under section 1983, the Second Circuit reversed a jury verdict in favor of the defendants and remanded for a new trial, holding that

[i]n light of *Graham,* therefore, it was plain error to charge the jury under the old *Johnson v. Glick* standard for evaluating excessive force claims, and we reverse "without considering whether the

---

3. Therefore, we need not decide whether Hoy's actions prior to the shooting were sufficiently analogous to an investigatory stop to constitute a "seizure" for fourth amendment purposes. *Cf. United States v. Mendenhall,* 446 U.S. 544, 551–

55, 100 S.Ct. 1870, 1875–78, 64 L.Ed.2d 497 (1980); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

appropriate objections were made below."

*Miller,* slip op. at 1070 (quoting *Heath v. Henning,* 854 F.2d 6, 9 (2d Cir.1988)). We agree with the Second Circuit, and hold that it was plain error for the district court to give the *Rinker* instruction.[4] We reject Hoy's argument that his actions were reasonable as a matter of law and that we should affirm on the basis that he was entitled to a directed verdict. While a jury may find that Hoy acted reasonably, Reed presented sufficient evidence that a reasonable jury could rule in his favor.

Because the jury was instructed incorrectly, we reverse and remand to the district court. On retrial, the court must instruct the jury to determine whether Hoy's seizure of Reed was reasonable through balancing " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *See Graham,* 109 S.Ct. at 1871. The jury, evaluating the particular facts and circumstances of the case, must consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade by flight. *Id.* at 1872.

## B. Duty to Retreat Instruction

■ Because of the likelihood of a new trial, interests of judicial economy require

us to address Reed's other major challenge to the jury instructions given below. Reed contends that the district court erred in refusing to instruct the jury that, under Oregon law,[5] Officer Hoy had a duty to retreat before using deadly physical force. We conclude that this contention has no merit.

Reed relies primarily upon Or.Rev.Stat. § 161.219 [6] and *State v. Charles,* 293 Or. 273, 647 P.2d 897, 903 (1982). *Charles* involved a street fight in which the defendant killed an assailant. In his murder trial, he requested that the trial court instruct the jury that a "person claiming the right of self-defense is not required to retreat or to consider whether he could safely retreat." 647 P.2d at 898. The trial court refused to give the requested instruction, Charles was convicted, and he appealed.

The Oregon Supreme Court held that a trial court did not err in refusing to give the instruction requested by Charles. It ruled that the concept of "necessity" embodied in Oregon's law of self-defense embraced the concept of retreat, at least in certain situations.[7] Therefore, it concluded that there was no general "no retreat" rule in Oregon and that a "no retreat" instruction was not required under the facts of that case. *Id.* at 901–03.

However, it is important to note that section 161.219 and *Charles* involve situations in which the user of deadly force was

---

**4.** Moreover, we note that Reed properly objected to the *Rinker* instruction and that his Requested Jury Instruction No. 8 embodies the basic elements of the reasonableness test to be applied in evaluating claims of excessive force under the fourth amendment.

**5.** State law is often relevant in analyzing the reasonableness of police activities under the fourth amendment. *Garner,* 471 U.S. at 15–16, 105 S.Ct. at 1703–04. In fact, the Eighth Circuit has stated that "a search unauthorized by state law would *ipso facto* violate the Fourth Amendment." *Bissonette v. Haig,* 800 F.2d 812, 816 (8th Cir.1986) (en banc). Thus, if Oregon law required Hoy to retreat before using deadly force, that is an important factor in determining whether Hoy's actions were reasonable under the fourth amendment. We note that Reed does not argue that the fourth amendment, apart

from Oregon law, requires a police officer to retreat before using deadly force.

**6.** That section provides:
Notwithstanding the provisions of ORS 161.-209, a person is not justified in using deadly physical force upon another person unless that person is:
(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or
(2) Committing or attempting to commit a burglary in a dwelling; or
(3) Using or about to use unlawful deadly physical force against a person.

**7.** The *Charles* court did recognize that an individual is not required to retreat when he is in his "castle" and that this "castle" concept may extend to a person's place of business or employment. *Id.* at 902.

an ordinary citizen. Reed has not cited to this court a single case from any jurisdiction suggesting that police officers have the same duty to retreat as ordinary citizens. In our view, such a duty may be inconsistent with police officers' duty to the public to pursue investigations of criminal activity. We are reluctant to apply such a rule in the absence of some clear authority.

Moreover, although neither the Oregon legislature nor the Oregon courts have dealt directly with the issue of a police officer's duty to retreat in a deadly force situation, we note that there is some indication that the duty to retreat in Oregon, whatever its precise boundaries, would not extend to police officers acting in the line of duty. The *Charles* court noted that the Oregon legislature had before it in 1970 a provision expressly requiring retreat. It provided:

> Notwithstanding the provisions of [161.209], a person is not justified in using deadly physical force upon another person unless he reasonably believes that the other person is:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (3) Using or about to use unlawful deadly force; however a person shall not use deadly physical force in defense of himself if he knows that he can with complete safety avoid the necessity of using such force by retreating. *A person is under no duty to retreat if he is:*
>
> (a) In his dwelling and is not the original aggressor; or
>
> (b) *A peace officer or a person assisting a peace officer at his direction,* acting under [161.249].

*Charles,* 647 P.2d at 899 (quoting Proposed Oregon Criminal Code § 23, at 22 (1970)) (emphasis added). The court noted that the rule was rejected but that the commentary to the proposed code stated that, under the Oregon case law, the statute was probably not necessary. *Id.*

Thus, the proposed statute creating a duty to retreat expressly excluded police officers performing their duties. As the *Charles* court noted, this provision was viewed as embodying the Oregon common law in effect at that time. That common law influenced the *Charles* court's analysis. We conclude that, under Oregon law, the duty to retreat does not extend to police officers performing their official function. The district court did not err in refusing to give Reed's "duty to retreat" instruction.

## C. Failure to Provide Adequate Training

Reed also sued Douglas County, Hoy's employer, alleging an unconstitutional failure to provide adequate training. The district court denied the County's motion for a directed verdict and allowed the failure-to-train issue to go to the jury; however, the jury did not reach it because it found Hoy not liable on the underlying claim. The County now urges that we affirm the verdict for the County on the grounds that the district court should have directed a verdict in its favor.

While the County provided evidence of significant training, Reed also submitted expert testimony that the County's program was far below national standards. Some evidence suggested that the County itself lacked confidence in the efficacy of its program. Therefore, the district court properly found factual disputes sufficient to defeat a motion for a directed verdict under the gross negligence standard it applied.

■ We observe, however, that an intervening Supreme Court case has held that the mental state applicable to Section 1983 failure-to-train claims is deliberate indifference, not gross negligence. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In any further proceedings, the district court should apply the *City of Canton* standard.

## IV.

### CONCLUSION

Under *Graham v. Connor,* excessive force claims arising from a seizure must be analyzed under the fourth amendment's reasonableness standard. The *Graham* standard is applicable to the facts of this

case. Because the jury was instructed that it could not find for Reed unless the more stringent substantive due process standard was met, we must reverse the verdict in favor of Hoy and remand for a new trial. The trial court did not err in refusing to give Reed's requested "duty to retreat" instruction.

REVERSED and REMANDED.