Gene KELLER, Plaintiff,

v.

Carl FRINK, Defendant.

No. IP 89–923–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 28, 1990.

Robert O. Williams, Covington, Ind., William V. Barteau, Barteau & Deal, Speedway, Ind., for plaintiff.

Wayne E. Uhl, Deputy Atty. Gen., State of Ind., Indianapolis, Ind., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on cross-motions for summary judgment. The issues raised have been briefed and are ready for resolution. The issues raised in this motion allow no easy resolution. While the legal principles are settled, no clear guiding precedent from the Supreme Court or from the Seventh Circuit exists. After careful review of the caselaw, for the reasons set forth, the Court finds that genuine issues of material fact remain, and defendant Carl Frink's motion for summary judgment is DENIED. Plaintiff Gene Keller's cross-motion for summary judgment is also DENIED.

### I. BACKGROUND[1]

The historical facts are not in dispute. Succinctly stated, on November 7, 1987, defendant Carl Frink, an Indiana Conservation Officer, received a report that a deer had been shot out of season (a class B misdemeanor). Frink outfitted himself with a bullet-proof vest, a shoulder holster containing a 0.45 Caliber Colt automatic, and a Remington 12–gauge shotgun. Frink then proceeded to the place where he thought the poached deer was located. Frink concealed himself, waiting for someone to retrieve the deer.

Gene Keller was the driver of a 1977 Ford van which stopped near the location of the deer. Frink saw two other men drag the deer up to the back of the van and begin to load it into the van. Frink left his hiding place, ran towards the van and yelled at the men. One of the men jumped into the back of the van and pulled the deer inside. The other man ran to the side of the van and the van started to drive away. Frink aimed his shotgun at the van and fired a 12–gauge rifled shotgun slug through the rear of the van, striking Keller in the back. Frink then arrested all three men and charged them with illegal possession of game.

The parties dispute Frink's state of mind at the time of the shooting. Frink contends that he was only trying to mark the van for later identification and did not intend to stop the van when he fired the shotgun. To support this allegation, Frink states that he believed that the shotgun was loaded with buckshot instead of a slug. Keller contends that Frink was attempting to stop the van when he fired.

Keller brought a claim under 42 U.S.C. § 1983, alleging violation of his civil rights under the Fourth Amendment due to the use of excessive force in his apprehension.

### II. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or

---

1. The material facts relied upon are determined to be admissible under the Federal Rules of Evidence.

as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Since the Supreme Court's trilogy of decisions on summary judgment, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), it is clear that the mandatory aspects of Rule 56 must be followed by the district courts, and, as a result, summary judgment must be entered where appropriate. Decisions of the Seventh Circuit reflect this change in attitude. *See, e.g., Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *Spellman v. Commissioner*, 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988).

## III. DISCUSSION

The Fourth Amendment to the Constitution prohibits "unreasonable searches and seizures." This provision applies to the states by virtue of the Fourteenth Amendment Due Process Clause. To determine whether a pleading states a Fourth Amendment cause of action, the Court must determine whether there was a "seizure" in the Fourth Amendment sense, and whether the "seizure" was accomplished in an unreasonably dangerous or inappropriate manner. *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985). Thus, the analysis begins with whether Keller was "seized" within the meaning of the Fourth Amendment.

### A. Accidental Seizure

This case is unique because it presents the issue of what the Supreme Court has termed "unintentional seizure." Because the Supreme Court has not directly addressed the issue of unintentional seizure, and because lower federal courts have ap- plied the present state of the law in a seemingly inconsistent manner, it is necessary to review the doctrine of Fourth Amendment seizure.

■ Generally, "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (officer's fatal shooting of a fleeing suspect constituted a Fourth Amendment seizure) (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Recently, the Supreme Court has commented on the intent element. *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Because the intent element is essential to the case at bar, the relevant portions of the *Brower* opinion are set out at length below.

Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act.... In sum, the Fourth Amendment addresses "misuse of power," not the accidental effects of otherwise lawful government conduct.

Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was on the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the

fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. [A police chase in which the suspect unexpectedly loses control of his car and crashes.] The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

. . . .

In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place on order to achieve that result.

*Brower,* 109 S.Ct. at 1381–82 (citations omitted) (emphasis in original).

A critical distinction is made by the Supreme Court between subjective intent and objective intent. The Supreme Court stated that "we do not think it practicable to conduct … an inquiry into subjective intent." *Brower,* 109 S.Ct. at 1382. This is consistent with an earlier statement by the Supreme Court. The Court stated that the subjective intent of an officer, as to whether he is attempting to detain the defendant, is irrelevant. *United States v. Mendenhall,* 446 U.S. 544, 554 n. 6, 100 S.Ct. 1870,

1877 n. 6, 64 L.Ed.2d 497 (1980). *Accord Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional").

■ What the Supreme Court means when it speaks of "governmental intent" must be objective intent; otherwise, the Fourth Amendment would provide no protection against a police officer who is too drunk to act intentionally. *See Brower,* 109 S.Ct. at 1383 (Justice Stevens concurring).[2] Thus, for a seizure to be accidental, and not controlled by the Fourth Amendment, the act must be objectively unintentional (non-pursuing police car slips its brake), and not subjectively unintentional (pursuing police car slips its brake).

The reported cases all seem to look to subjective intent. However, the distinction between subjective and objective intent was not in issue in any of those cases. The district court in *Palmer v. Williamson,* 717 F.Supp. 1218, 1223 (W.D.Tex.1989) (decided after *Brower*), stated that if an officer means to stop the plaintiff by firing his gun at the plaintiff's car and the car is in fact stopped, then a Fourth Amendment seizure has occurred. The officer stated that he intended to stop the car. In *Reed v. Hoy,* 909 F.2d 324, 329 (9th Cir.1989) (also decided after *Brower*), the Ninth Circuit looked to the subjective intent of the officer to shoot the plaintiff in determining that the method of seizure was intentionally applied. The court did not say that objectively the officer meant to seize the plaintiff by shooting him, even though this was obviously true. Similarly, in *Apodaca v. Rio Arriba County Sheriff's Dept.,* 905 F.2d 1445 (10th Cir.1990), a police officer's car hit the plaintiff's car while responding to a call. The accident was in no way

---

**2.** The concurring Justices believe the concept of objective intent adds little to the well established rule "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the

incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

related to the call. The court held that there was no seizure because no allegation was made that the officer intended to stop the plaintiff.

The First Circuit gives a narrow reading to the intent element. In *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir.1990), the First Circuit held that no Fourth Amendment seizure occurred when a hostage was inadvertently shot during police pursuit of a robbery suspect, where officer shot at the car for the purpose of stopping the robber's flight. There was no dispute that the police officers deliberately fired at the car. The First Circuit held that "[a] police officer's deliberate decision to shoot at a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern.... [N]o Fourth Amendment seizure occurred here because [the plaintiff] was not the object of the police bullet that struck him." *Landol–Rivera*, 906 F.2d at 795 (emphasis in original). Thus, the First Circuit would require that the police officer's actions be directed at a particular individual before a Fourth Amendment violation could occur.

The Fifth Circuit gives a broader reading to the intent element. In *Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir.1985), the Fifth Circuit held that the plaintiff was seized when officers deliberately placed a roadblock in front of the car in which they knew she was a passenger. Thus, even though it was undisputed that the plaintiff was not the target of the roadblock, the Fifth Circuit held that intent to stop the car was enough to constitute a seizure under the Fourth Amendment.

■ This Court finds the analysis of *Jamieson* persuasive, and holds that intent to stop a car includes intent to stop everyone inside the car. *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987); *Richards v. Local 134, Int'l Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986) (district court should give "respectful consideration" to the decisions of other circuits when no Seventh Circuit authority is on point).

■ The *Brower* analysis breaks down into a three-part test: a seizure is a (1) governmental (2) termination of freedom of movement (3) through means intentionally applied. There is no dispute that the first two parts are satisfied: Frink is a government actor for the purposes of the Fourth Amendment, and Keller's freedom of movement was terminated by the shooting. The issue turns on the application of the third element. Frink's argument that he intended to only mark the van and not apprehend the men is irrelevant. The question is whether shooting at the van demonstrated an objective intent to stop it. If answered in the affirmative, then Keller was seized within the meaning of the Fourth Amendment. This question is left to the trier of fact.

#### B. Deadly Force

■ If the trier of fact determines that there was a Fourth Amendment seizure, then the Court must determine whether the seizure was accomplished in an unreasonably dangerous manner. The analysis of an excessive force claim under the Fourth Amendment must begin with the case of *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Garner*, the Supreme Court held that deadly force may not be used unless it is necessary to prevent the escape of a suspected felon and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Id.* at 3, 105 S.Ct. at 1697. Thus, because Keller was not a suspected felon, or, alternatively, because there was no probable cause to believe Keller was a significant threat of serious injury to others, deadly force would never be appropriate. Because this Court holds that firing a loaded shotgun at a vehicle known to be occupied constitutes deadly force as a matter of law, the Fourth Amendment has been violated. *See Davis v. Freels*, 583 F.2d 337, 341 (7th Cir.1978); *Burton v. Waller*, 502 F.2d 1261 (5th Cir. 1974).

## C. Qualified Immunity

The courts have created the rule of qualified immunity to ensure that public officials will not be unduly pinioned in the performance of their duties by the fear of personal liability. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Police officers are shielded from liability under 42 U.S.C. § 1983 if the right they are alleged to have violated was not clearly established at the time of the incident. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. While it is the defendant's responsibility to show that their conduct was not violative of any of the plaintiff's clearly established rights, *Pennington v. Hobson,* 719 F.Supp. 760, 765 (S.D.Ind. 1989), the plaintiff bears the burden of proving the existence of a clearly established right. *Hannon v. Turnage,* 892 F.2d 653 (7th Cir.1990). Although allegations of abstract rights are insufficient to counter a right to qualified immunity, the very action in question need not have been previously held unlawful. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. It is only required that in light of pre-existing law the unlawfulness of the action is apparent. *Auriemma v. Rice,* 910 F.2d 1449 (7th Cir. 1990) (en banc).

The determination of what the "clearly established" law was at the time of the defendant's actions is a question for the court; the jury considers only the issue of whether the defendant's conduct was reasonable in light of the law. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). To resolve this question the court must "survey the legal landscape" as it existed at the time of the incident. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

As this Court has previously stated:

Qualified immunity is a fact-sensitive issue, and it is determined by an objective, rather than a subjective standard: immunity turned on whether a reasonable official in the defendant's position at the time the cause of action arose would have known that the challenged conduct violated a clearly established right. Further, the right allegedly violated must be defined with specificity—a plaintiff cannot defeat the defense of immunity by asserting that the defendants violated some broad constitutional precept.

*Pennington,* 719 F.Supp. at 765–66 (citations omitted).

While the Supreme Court recently reinforced the idea that accidental seizures are judged on an objective rather than subjective basis, the Supreme Court, in 1980, stated that the subjective intent of an officer, as to whether he is attempting to detain the defendant, is irrelevant. *United States v. Mendenhall,* 446 U.S. 544, 554 n. 6, 100 S.Ct. 1870, 1877 n. 6, 64 L.Ed.2d 497 (1980). Further, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Thus, a reasonable officer, charged with knowledge of the present state of the law as of 1987, would have judged his actions on an objective basis rather than what he subjectively intended to do.

Frink argues that because there are no federal cases dealing with an analogous situation, he is entitled to immunity. This argument misses the point. The right must be defined specifically, not the facts. *See Pennington,* 719 F.Supp. at 766. The right was specifically defined and Frink is not entitled to immunity.

## IV. CONCLUSION

In summary, after careful review of the caselaw, for the reasons set forth, the Court finds that genuine issues of material fact remain. The trier of fact must determine whether shooting at the van demonstrated an objective intent to stop it. Thus, defendant Carl Frink's motion for summary judgment is DENIED. Plaintiff Gene

**1434**

Keller's cross-motion for summary judgment is also DENIED.

IT IS SO ORDERED.