Alvin Dean McRAE, et al., Plaintiffs,

v.

John TENA, et al., Defendants.

No. CIV–93–1741–PHX–ROS.

United States District Court,
D. Arizona.

Jan. 25, 1996.

Alexander L. Sierra, Kerley & Sierra, Tucson, AZ, Denis Michael Fitzgibbons, Fitzgibbons Law Offices, Casa Grande, AZ, James K. Kerley, Kerley Sierra & Broom, Sierra Vista, AZ, for Alvin Dean McRae, Deborah McRae, Marcey D. McRae, Katherine L. McRae, Alvin D. McRae, III, Amber E. McRae, Matthew C. McRae.

Steven Arthur LaMar, Robert Grasso, Jr., LaMar & Grasso P.C., Scottsdale, AZ, for John Tena.

Daryl A. Audilett, Kimble, Gothreau & Nelson, P.C., Tucson, AZ, Steven Arthur LaMar, Robert Grasso, Jr., LaMar & Grasso P.C., Scottsdale, AZ, for Bob Tucci, Jerry Monahan, Greg Clark, R.D. Barnhart.

Daryl A. Audilett, Kimble, Gothreau & Nelson, P.C., Tucson, AZ, for City of Casa Grande, Arizona.

## ORDER

SILVER, District Judge.

This cause of action arises from an incident in which Defendant Officer John Tena of the Casa Grande Police Department shot Plaintiff Alvin McRae. McRae, together with his wife and children, commenced this action naming as defendants Tena, several other Officers who were involved in the incident, and the City of Casa Grande. The Plaintiffs seek compensatory and punitive damages for alleged violations of McRae's rights under the United States Constitution and the laws of the state of Arizona.

On January 2, 1996, the Court heard oral argument on two motions for summary judgment in this case, one filed on behalf of Defendants City of Casa Grande Police Officers John Tena, Bob Tucci, Jerry Monahan, Greg Clark, and R.D. Barnhart ("Defendant Officers"), the other on behalf of Defendant City of Casa Grande ("Defendant City"). At the conclusion of the argument, the Court granted the motions, indicating that a formal, written order would follow. This is that order.

## BACKGROUND

It is undisputed that Plaintiff Alvin McRae suffers from a mental disturbance known as "multiple personality disorder" or "dissociative identity disorder," which causes him to display a number of different personalities. When an alternate personality surfaces, McRae "blacks out" and later has no recollection of events. During the confrontation with police that gave rise to this lawsuit, it was "Dual," an angry personality who has trouble with authority figures, who surfaced. Because McRae remembers very little of the events in question, most of the relevant facts of his confrontation with the Defendant Officers are undisputed. Where disputes do exist, the facts will be viewed in a light most favorable to McRae.

At about 4 a.m. on June 20, 1993, Officers Tena and Tucci were responding to a complaint of a prowler described as a large, black woman when they noticed McRae lying in the front yard of a residence. Beside McRae was a knife, approximately ten to twelve inches in length. The Officers approached McRae, and Tucci picked up the knife.

The Officers then woke McRae and asked him whether he was okay and whether he had seen the prowler. McRae became upset and demanded that the knife be returned to him; Tucci refused. McRae got to his feet and ordered the two men off his property.[1] He realized that the men were police officers, and he believed that Tucci was harassing him. McRae and Tucci continued to argue over the return of the knife, and McRae remembers telling Tucci to leave him alone. McRae then "blacked out." Subsequent

---

1. The house belonged to McRae's mother, and he    was temporarily residing there.

events occurred while McRae's "Dual" personality was in control.

McRae, who is over six feet tall and weighs around 280 pounds, then advanced upon the Officers, swinging a wooden cane and shouting verbal abuse and threats. As the Officers retreated, Tena aimed pepper spray in McRae's face in an effort to subdue him. McRae stopped briefly but then renewed his advance on Tena, who backed toward his car and sprayed McRae a second time, getting some spray in his own eyes. Tena then used a radio on his belt to call a supervisor.

Fearing that McRae would either charge at them with the cane or throw it at them, Tucci and Tena drew their firearms. They told McRae to drop the cane and come out of the yard. Instead, he turned away from the Officers and went to the carport, where he retrieved an object that Officer Tena described as "like a lawnmower blade from a push-type lawnmower; 13 to 18 inches long, metal object, couple inches wide and about a half-inch thick." Angry and agitated, McRae challenged the Officers to fight. They offered to put their guns away if he would drop the metal bar. He refused.

Shortly thereafter, Officers Clark, Monahan, and Barnhart arrived at the scene of this stand-off. Barnhart recognized McRae, having encountered him about a year earlier, after an apartment manager had complained that McRae was making a lot of noise in the course of removing some cans out of a dumpster. Barnhart characterized that particular encounter as "friendly," but he had heard of McRae's reputed mental problems and had also heard of a incident in which McRae had injured a member of the Coolidge Police Department. Clark, who had previously worked in the Coolidge area, also recognized McRae and was aware that he suffered from mental problems and had a propensity for violence. Monahan recalled having seen a bulletin advising officers that McRae had serious mental problems and should be considered a threat to officer safety.

Monahan contacted a supervisor, who advised the Officers to "try to pull back." When Monahan announced that the Officers

would be leaving, McRae indicated that though the others could leave, he intended to kill Officer Tena by throwing the metal bar at him at the count of three. Tena was standing behind a police vehicle, which left him exposed only above mid-chest level. McRae began to count. At the count of two, his arm was back and he was ready to throw. Tena then shot McRae in the chest.

The discussion below is limited to McRae's claims under federal law.[2] His state law claims will be dismissed without prejudice pursuant to 28 U.S.C. section 1367(c)(3).

## DEFENDANT OFFICERS

McRae contends that all of the Defendant Officers used excessive force against him in violation of his constitutional rights—Officer Tena, by shooting him, and the other Officers, by failing to intervene to prevent the shooting. The parties agree that McRae's constitutional claim must be analyzed exclusively according to the Fourth Amendment's standard of "objective reasonableness." *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). They disagree, however, over whether an identical standard governs the Officers' defense of qualified immunity.

### 1. Liability for Excessive Force

■ A review of the relevant Ninth Circuit case law strongly suggests that it will be a rare case indeed in which an officer's use of force, especially deadly force, will be found to be reasonable as matter of law. *See, e.g., Reed v. Hoy,* 909 F.2d 324 (9th Cir.1989), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991).

The facts in *Reed* were remarkably similar to those in the instant case. Dispatched to investigate a domestic disturbance at Reed's residence, Officer Hoy confronted Reed outside the house. Reed demanded that the Officer leave the premises, threatening him first with a bamboo stick, to which Hoy responded by drawing his nightstick, and later with a splitting maul, at which point

---

**2.** The Plaintiffs have not attempted to draw any legal distinctions between McRae's claims and

those of his wife and children. The Court will not do so either.

Hoy drew his revolver. When Reed advanced toward Hoy, raising the maul in a threatening manner, Hoy shot Reed in the chest.

On appeal from a judgment on a defense verdict, the Ninth Circuit reversed because the jury had received an erroneous instruction regarding the level of culpability necessary for a constitutional violation. Officer Hoy urged the Court of Appeals to affirm the judgment on the ground that a directed verdict would have been proper even if the jury had been properly instructed. The Ninth Circuit declined to do so, holding that Reed had presented sufficient evidence for a reasonable jury to find in his favor. *See also, Chew v. Gates,* 27 F.3d 1432, 1443 (9th Cir. 1994) (citing *Reed* for the proposition that whether a particular use of force was reasonable is rarely determinable as a matter of law), *cert. denied,* —— U.S. ——, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995).

Under the circumstances, this Court is unable to find that the Defendant Officers' conduct was reasonable as a matter of law. Plaintiffs maintain that the Defendant Officers' claim to qualified immunity must likewise fail because it is governed by the same "objective reasonableness" test. Here, the Court disagrees.

## 2. Qualified Immunity

■ The Ninth Circuit Court of Appeals has repeatedly held that the defense of qualified immunity is available to police officers in excessive force cases. *See, e.g., Scott v. Henrich,* 39 F.3d 912 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). Furthermore, though some three-judge panels of that court have observed that the qualified immunity inquiry is the same as the inquiry on the merits in such cases, *see, e.g., Hopkins v. Andaya,* 958

F.2d 881, 885 n. 3 (9th Cir.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995), and *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.1995), the same court, sitting en banc, has followed well-established case law that draws a distinction between these two inquiries. *See Hammer v. Gross,* 932 F.2d 842, 850 (9th Cir.) (en banc) (citing *Anderson v. Creighton,* 483 U.S. 635, 643, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987), and rejecting the argument that an officer who has used excessive force cannot, by definition, have acted reasonably), *cert. denied,* 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991); *see also, Curnow v. Ridgecrest Police,* 952 F.2d 321 (9th Cir.1991) (affirming the trial court's denial of summary judgment based on qualified immunity because under plaintiff's version of the facts, the officer could not reasonably have believed his conduct to be lawful), *cert. denied,* 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 369 (1992).[3]

*Hammer* may have been disregarded or overlooked, but it has not been overruled, and this Court will follow it. The Court must therefore determine whether, in light of clearly established principles governing the conduct in question, the Defendant Officers could reasonably have believed that their conduct was lawful. *See Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993) (citing *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039). "This standard requires a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Id.*

■ It is Plaintiffs' burden to prove that the law governing the Defendants' conduct was "clearly established." *Maraziti v. First Interstate Bank of California,* 953 F.2d 520,

---

3. Judge Rhoades of the Southern District of California has attempted to reconcile this inconsistency by suggesting that the Ninth Circuit's observation that the qualified immunity inquiry is the same as the inquiry on the merits means only that the two questions are resolved by reference to the same underlying facts. *See Reynolds v. County of San Diego,* 858 F.Supp. 1064, 1070–71 (S.D.Cal.1994).

The First Circuit recently recognized similar inconsistencies in its own prior decisions. Employing the separate qualified immunity analysis required by *Anderson,* the court stated that it would "draw on the cases decided in the liability context for guidance in deciding the qualified immunity question." *St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 n. 2 (1st Cir.1995), *aff'g* 885 F.Supp. 349, 355–56 (D.N.H.1995) (criticizing decisions from several circuits, including the Ninth, for suggesting that the same test should be used to evaluate both the substantive claim and the immunity defense).

523 (9th Cir.1992). Moreover, this burden is not met merely by identifying a general constitutional guarantee that was allegedly infringed. *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir.1989). To the contrary,

> [t]his "clearly established law" test requires more than just an alleged "violation of extremely abstract rights." Rather, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." In other words, "in light of preexisting law the unlawfulness must be apparent."

*Curnow,* 952 F.2d at 324 (quoting *Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39) (alteration in original).

█ In the instant case, Plaintiffs have made the general assertion that the Defendant Officers violated McRae's "clearly established" right to be free from the use of excessive force by police. This formulation of the right allegedly infringed, however, provides nothing more than the level of generality that was discredited in *Anderson.* Furthermore, when pressed at oral argument to define more explicitly the "contours" of the "clearly established" right or to present some preexisting law in light of which the unlawfulness of the Officers' conduct was apparent, Plaintiffs' counsel could point only to his client's Fourth Amendment right to be free from "unreasonable seizures" and the Arizona statutes describing the circumstances in which the use of force is justified.

Plaintiffs do not and could not deny that under the law, an officer who is confronted by a person reasonably believed to be armed and dangerous may use deadly force to defend himself. *See Tennessee v. Garner,.* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985); *see also* A.R.S. § 13–405. Nor do Plaintiffs contend that the law requires an officer to retreat in the face of another's threatened use of force or to ascertain and choose the "least intrusive alternative." *See Reed,* 909 F.2d at 330–31 (no duty to retreat); *Scott,* 39 F.3d at 915 (officers need not avail themselves of the least intrusive means of responding to an exigent situation).

The essence of Plaintiffs' excessive force claim is that the Defendant Officers exer-

cised poor judgment when they failed to heed McRae's early demands to leave him alone, when they drew their weapons and pointed them at him, and finally when Officer Tena decided to shoot him rather than attempt to duck or dodge the metal bar that he was about to throw. In support of this position, Plaintiffs have offered the opinion of their expert, Mr. I. Gayle Shuman, who believes that the Officers' above-described conduct was "inappropriate." This controverting evidence is not sufficient to meet the requirement of setting forth the relevant legal rule which is clearly established. It constitutes nothing more than an alleged "violation of extremely abstract rights." The Supreme Court eschewed generalizing of the "clearly established right" factor. The Court stated that:

> "[I]f the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow* [*v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ]. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038.

█ What is more, even if this Court were to apply a generalized standard to the facts of this case the officers are entitled to qualified immunity. The qualified immunity defense *allows* for mistaken judgments; it protects "all but the plainly incompetent or those who knowingly violate the law." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1099 (9th Cir.1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

In this case, the Defendant Officers were initially called upon to interact with a tempestuous, unpredictable person. The confrontation swiftly ripened to the point where McRae was in the process of demonstrating an expressed intent to kill Officer Tena by throwing a metal bar at him. As defense

counsel suggested during oral argument, if the officers carried applicable case law in their back pockets and had time to engage in a thoughtful perusal of these cases, such as *Tennessee v. Garner, Scott v. Henrich,* and *Reynolds v. County of San Diego,* they could reasonably have believed that Officer Tena would be justified in shooting McRae. Had they also had a copy of *Reed v. Hoy* in their possession, they might have thought twice, but if the law is ambiguous it is, by definition, not "clearly established." Certainly, a primary reason for the principle that the law be clearly established is to spare police officers the task of grappling with the vicissitudes of the law before taking action in an exigent situation.

The Court concludes that the Plaintiffs have failed to meet their burden of showing a violation of "clearly established" law and that the officers, acting reasonably, should have known that they were in violation of the law. The Defendant Officers are thus entitled to summary judgment based on qualified immunity.

## MUNICIPAL LIABILITY

■ Plaintiffs' claim against the Defendant City is based upon their theory that the injury inflicted on McRae resulted from the City's failure to adequately train and/or supervise its employees. Plaintiffs agree that to prevail on this claim they must show that the City's failure to provide adequate training or supervision to police amounts to a policy or custom evidencing a deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiffs initially raised questions about the City's response to two previous incidents involving the use or alleged use of excessive force by Casa Grande police officers.[4] By the time of oral argument, however, Plaintiffs had apparently decided to abandon this line of attack, retreating to the position that the single incident from which the instant case arose is sufficient to sustain municipal liability.

In support of this position, Plaintiffs cite *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), in which the Supreme Court held that municipal liability could be based upon a single incident in which a County Prosecutor, possessed of policy-making authority, instructed police officers to serve legal process in a manner that violated the Fourth Amendment rights of the person served. *Pembaur* is inapposite. It does not support Plaintiffs' argument that a single incident allegedly involving the use of excessive force by police may be sufficient *by itself* to establish an official custom or policy to provide inadequate training or supervision. The Supreme Court rejected that argument in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

This case would be analogous to *Pembaur* if someone in a policy-making position had expressly authorized the Defendant Officers, as the saying goes, to "shoot first and ask questions later." All of the evidence in this case, however, is to the contrary. Officer Tena had received extensive training in the appropriate use of deadly force. He knew that he was to shoot only if he or another person was in danger of serious injury and, even then, only as a last resort. The Defendant Officers had been instructed by superiors to withdraw from the scene and were attempting to do so when McRae indicated his intention to kill Officer Tena.

---

**4.** Plaintiffs were attempting to establish that the Defendant City had a policy of condoning the use of excessive force by its police officers. In the "Dobbs Incident," a suspect sustained several broken bones in his hand and arm during an arrest. The officers involved were suspended for five to ten days, and one officer's pay was reduced one step. In the "Wallace Incident," officers attempted to apply a "carotid restraint hold" to a suspect who appeared to be hiding something in his mouth. The suspect did not lose consciousness as planned, but did spit out a small glass vial. The suspect then tried to swallow a plastic bag of marijuana that had also been in his mouth, but the bag stuck in his throat, interfering with his breathing so that he suffered brain damage. The Defendant City thereafter changed its policy on the use of "carotid restraint holds," but it did not discipline the officers involved. The opinion of Defendant City's expert, which is uncontroverted, was that the official response to both of these incidents was entirely appropriate.

The Plaintiffs have failed to offer evidence that the Defendant Officers received inadequate training or supervision, much less evidence of deliberate indifference by the City of Casa Grande. The Court thus finds that no genuine issue of material fact exists and that the Defendant City is entitled to judgment as a matter of law.

Having concluded that all of the Defendants are entitled to summary judgment on Plaintiffs' federal claims, the Court declines to retain jurisdiction over their state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly,

**IT IS ORDERED** granting Defendants Tena, Tucci, Monahan, Clark, and Barnhart's Motion for Summary Judgment (Document No. 77).

**IT IS FURTHER ORDERED** granting Defendant City of Casa Grande's Motion for Summary Judgment (Document No. 75).

**IT IS FURTHER ORDERED** dismissing without prejudice the remaining claims in Plaintiffs' Complaint.