73 F.3d 934
 96 Cal. Daily Op. Serv. 240, 96 Daily Journal
D.A.R. 368
Marie PELLEGRINO, as Administratrix of the goods, chattels
and credits which were of John Pellegrino; Marie
Pellegrino, individually; and Joseph
Pellegrino, Plaintiffs-Appellants,
v.
UNITED STATES of America; United States Department of the
Treasury, Customs Service; Nicholas Brady, as Secretary of
U.S. Department of the Treasury; Carol B. Hallett, as
Commissioner of U.S. Customs Service; Paul Andrews, as
District Director of U.S. Customs Service in California;
Stephen A. Fanter; and Jeffrey Woods, Defendants-Appellees.
Marie PELLEGRINO, as Administratrix of the goods, chattels
and credits which were of John Pellegrino; Marie
Pellegrino, individually; and Joseph
Pellegrino, Plaintiffs-Appellees,
v.
UNITED STATES of America, et al., Defendants,
and
Stephen A. Fanter, Defendant-Appellant.
 Nos. 93-56225, 93-56236.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1995.
Decided Jan. 10, 1996.
 
 Jeffrica Jenkins Lee, United States Department of Justice, Washington, DC, for defendants-appellants, cross-appellees.
 Lucianna Locorotondo and Joseph N. Giamboi, Giamboi, Reiss & Squitieri, New York City, for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of California.
 Before: WALLACE, Chief Judge, HUG and HAWKINS, Circuit Judges.
 Opinion by Judge HAWKINS; Partial Concurrence and Partial Dissent by Chief Judge WALLACE.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 This is one of those difficult cases for which there is no simple solution. It arises in the context of the use of deadly force by federal law enforcement agents and deals, at bottom, with the reasonableness of their actions. Marie Pellegrino, individually and in her capacity as administratrix of the estate of John Pellegrino ("John"), and Joseph Pellegrino ("Joseph"), who was present at the scene of the shooting, filed an action ("the Pellegrino claims") against United States Customs Agents Stephen Fanter ("Fanter") and Jeffrey Woods ("Woods") under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 2
 Woods and Fanter moved to dismiss or for summary judgment arguing that they were entitled to qualified immunity. The district court granted summary judgment as to Fanter and Woods on the basis of qualified immunity on all claims against Woods and all those against Fanter save those alleging Fanter's use of excessive force. As to this claim, the district court concluded that a genuine issue of material fact existed concerning Fanter's location at the time the shots were fired and whether Fanter reasonably believed his life was in danger. Both parties appeal; Fanter from the district court's order denying him qualified immunity and the Pellegrinos urging that the facts do not justify qualified immunity protection for either agent.
 
 I. Background Facts
 
 3
 The basic facts are essentially undisputed.[1] In the early morning hours of December 19, 1987, Agents Fanter and Woods were on an undercover surveillance assignment at a San Diego pier. The agents saw a vehicle approach the far end of the parking lot they were parked in. The agents presumed that the occupants of the vehicle, a man and a woman, were there for romantic reasons. Sometime later, the attention of the agents was drawn to the car. Through their binoculars they observed movements inside the car which looked like one person striking another. The agents decided to investigate. When they approached the car, they observed a man on top of a woman with his pants down. When the agents approached, the woman inside the car started screaming for help. The agents announced themselves as law enforcement agents and ordered the occupants out of the car.
 
 
 4
 John, who appeared clearly intoxicated to the agents, was ordered to leave the vehicle. When John persisted in his refusal to get out, Agent Fanter reached in and forcibly removed him from the car. Before Fanter could apply handcuffs to John, John was able to break free, jump back into the car and attempt to drive off. A struggle ensued, in which Fanter struck John on the back of the head with his weapon. Agent Woods, in the meantime, was keeping an eye on the woman, who had previously extricated herself from the car.
 
 
 5
 At this moment, John's brother Joseph ran up to the scene. Seeing his brother approach, John cried out: "Joey, Joey ... They're no cops. They ain't no cops, they ain't no cops." Able to start the car, John put it in reverse gear and raced backwards with Agent Fanter holding on to the door with one hand and his weapon with the other.
 
 
 6
 From this point, the parties are in sharp dispute as to the facts. Agent Fanter's version has him in fear for his life and holding on to the speeding car for dear life when he fired three shots, at least two of which hit and fatally wounded John. The Pellegrinos contend that Fanter had jumped clear of the vehicle and was safely out of harm's way when he fired.
 
 
 7
 It is this precise factual dispute which the district court could not resolve:
 
 
 8
 "Although the majority of the evidence ... weighs in favor of a finding of qualified immunity, ... the facts raised by plaintiffs, particularly on the issue of how far Fanter was [from the car] when he shot the decedent [John Pellegrino] and whether he [Agent Fanter] reasonably believed his life was in danger, do introduce a genuine issue of fact."
 
 II. Jurisdiction & The Merits
 A. The Pellegrino Appeal
 
 9
 We have jurisdiction of the Pellegrino appeal under 28 U.S.C. Sec. 1331 and we affirm. With respect to Woods, the district court properly ruled that Bivens liability is premised on proof of direct personal responsibility. Leonhard v. United States, 633 F.2d 599, 621 n. 30 (2d Cir.1980) cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Nor, in the absence of such proof, can Woods be held vicariously liable for the conduct of another. Sportique Fashions, Inc. v. Sullivan, 597 F.2d 664, 666 (9th Cir.1979).
 
 
 10
 The district court was also on solid ground in granting summary judgment with respect to the false imprisonment claims against both agents. The decision of a law enforcement officer to approach and temporarily detain someone in order to gather more information has been a fixed star in the law of arrest since Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889 (1968). Such investigatory stops do not require probable cause to arrest, but are reviewed under the standard of "founded suspicion" that criminal activity may be afoot. United States v. Taylor, 716 F.2d 701, 708 (9th Cir.1983). Nor is the use of force during a Terry "stop" in and of itself unreasonable where the force is justified by concern for the safety of the officer or others. United States v. Harrington, 923 F.2d 1371, 1373 (9th Cir.), cert. denied, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991).
 
 
 11
 The decision of the district court to enter summary judgment as to Agent Woods on all counts and to also enter summary judgment as to Agent Fanter on the false imprisonment claims was well founded and supported by the record.
 
 B. The Fanter Appeal
 
 12
 Unlike the Pellegrino appeal, we question whether we have jurisdiction with respect to the appeal of Agent Fanter. After this matter was argued and submitted, the Supreme Court decided Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), which held that, in a qualified immunity case, a district court determination that a summary judgment record raising genuine issues of fact is not a "final judgment" within the meaning of 28 U.S.C. Sec. 1291 and is therefore not appealable. --- U.S. at ----, 115 S.Ct. at 2156.[2] The Supreme Court in Johnson framed the issue as follows:
 
 
 13
 "This case concerns governmental officials--entitled to assert a qualified immunity defense in a 'constitutional tort' action--who seek an immediate appeal of a district court order denying their motions for summary judgment. The order in question resolved a fact-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial."
 
 
 14
 Id. at ----, 115 S.Ct. at 2153.
 
 
 15
 In dealing with the issue before us, we are mindful of the Supreme Court's admonition in Johnson:"[T]he issue here at stake--the existence, or non-existence of a triable issue of fact--is the kind of issue that trial judges, not appellate judges, confront almost daily. Institutionally speaking, appellate judges enjoy no comparative expertise in such matters."
 
 
 16
 Id. at ----, 115 S.Ct. at 2157.
 
 III. Conclusion
 
 17
 We believe this case falls squarely within the teaching of Johnson. The district court could not resolve the disputed facts with respect to the remaining claims against Fanter and neither should we. A jury will need to sort them out. Accordingly, we dismiss Agent Fanter's appeal (No. 93-56236) for lack of jurisdiction and affirm the district court with respect to those issues raised in the Pellegrino appeal (No. 93-56225). Each party is to bear its own costs.
 
 
 18
 AFFIRMED IN PART; APPEAL DISMISSED IN PART.
 
 
 19
 WALLACE, Chief Judge, concurring and dissenting:
 
 
 20
 I agree with the majority outcome affirming the summary judgment in favor of Agent Woods and that in favor of Agent Fanter on the false imprisonment claims. But that is as far as I go with the majority.
 
 
 21
 The majority concludes that, under Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (Johnson ), any summary judgment on a record which contains "genuine issues" of material fact is not a final judgment and is, therefore, not appealable. This conclusion contradicts Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), where the Supreme Court ruled that a district court's denial of qualified immunity is an appealable "final decision" for which a court of appeals has jurisdiction. Id. at 524-30, 105 S.Ct. at 2817. The majority's approach would seem to deny appellate jurisdiction over appeals from denials of qualified immunity for any case with disputed facts. Because I believe the majority misunderstands Johnson, I respectfully dissent.
 
 
 22
 In Mitchell, the Court held that qualified immunity is not a mere defense but rather an immunity from suit which would be lost if the case erroneously went to trial; therefore, denial of qualified immunity is an appropriate matter for interlocutory appeal. A determination of qualified immunity turns "on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Id. at 526, 105 S.Ct. at 2815. In making this determination, an appellate court "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim." Id. at 528, 105 S.Ct. at 2816. That "the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief" does not make a determination of qualified immunity unappealable because the "question of immunity is separate from the merits of the underlying action." Id.
 
 
 23
 As described in Mitchell, an appellate court's job is to take a given set of facts--usually those made out in the plaintiff's claim for relief--and answer the "essentially legal question" of whether the conduct so described violates clearly established law.
 
 
 24
 Johnson did not change or overrule this doctrine. It states only that a district court may not decide the existence or nonexistence of a triable issue of fact for purposes of summary judgment. Johnson, --- U.S. at ----, 115 S.Ct. at 2157. In Johnson, plaintiff Jones brought a constitutional tort action against five policemen for beatings he received while in custody. Three of the officers argued that there was not sufficient evidence to establish that they beat Jones or were present at his beatings. The evidence against the three officers consisted of Jones's deposition and the officers' depositions admitting their presence in or near the area where Jones was allegedly beaten. Id. at ----, 115 S.Ct. at 2153-54.
 
 
 25
 The officers argued that this evidence was insufficient to raise a genuine, triable issue of fact, and that therefore the district court incorrectly denied them qualified immunity. The Supreme Court responded that appellate courts do not have jurisdiction to determine whether an issue of fact, in this case the issue of the three officers' involvement, is genuine. Thus, the officers could not appeal the district court's denial of qualified immunity. Johnson does not preclude an appellate court from reviewing whether an officer violated clearly established law under any given set of facts. Id. at ----, 115 S.Ct. at 2159. The majority goes afield by failing to perceive the difference between determining the existence of a triable issue of fact and reviewing assumed facts. As Johnson states, "if appellate courts try to separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine'), they will have great difficulty doing so." Id.
 
 
 26
 Turning to this exact difficulty in the case before us, Johnson requires that an appellate court must first determine what exactly it is asked to review. Do we review a given set of facts to see whether they violate clearly established law or do we review a determination of which facts present "genuine" issues? In this case, I believe it is the former.
 
 
 27
 The Pellegrinos make no factual assertions which are challenged for insufficient supporting evidence. The government does not ask us to determine the existence of any factual, triable issues. Instead, the government asks us to review a given set of facts, as the Pellegrinos understand them, and to decide whether under those facts Fanter violated clearly established law. What this court must review is whether "in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993) (citations omitted).
 
 
 28
 Turning to the Pellegrinos' account which we must accept for purposes of this issue on appeal, it is undisputed that John Pellegrino's vehicle approached a parking lot at a San Diego pier with its headlights off, that the agents saw a woman sobbing as they approached the vehicle, that the agents observed Pellegrino with his pants down, and that the woman cried for help upon the agents' approach. Given these facts, Fanter had probable cause to believe that a rape was occurring. Thus, his initial approach was reasonable.
 
 
 29
 Even if Pellegrino was not raping the woman, the reasonableness of Fanter's subsequent use of force "must be judged from the perspective of a reasonable officer on the scene." Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991), cert. denied, 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 369 (1992), quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Fanter was entitled to use lethal force only if a reasonable officer could have believed that the use of such force was the only reasonable way of apprehending a suspect believed to have committed a crime involving the infliction of serious physical harm. Brower v. County of Inyo, 884 F.2d 1316, 1317-18 (9th Cir.1989).
 
 
 30
 Fanter fired three shots. It is undisputed that the first shot was fired while Fanter clung to the door of Pellegrino's moving car. While clinging to the car, Fanter reasonably feared that he might collide with the tree in the parking lot island. He reasonably fired to protect his own life.
 
 
 31
 When the second shot was fired is disputed. Joseph Pellegrino, John's brother, asserts that Fanter fired after dropping off the car door, while Fanter alleges that he fired while still clinging to the door. Taking Pellegrino's version, Fanter fired both the second and third shots while standing on the ground. In such a position--even at the distances which the Pellegrinos assert--Fanter reasonably feared that John, who was very intoxicated, would run over one or more of the individuals present. Considering these quickly transpiring events, I would rule that a reasonable officer in Fanter's position could have believed that lethal force was needed to protect himself and others, and as such, his actions did not violate clearly established law.
 
 
 
 [1]
 Agent Fanter, it turns out, was wearing a concealed tape recorder which captured the audible sounds of the events at issue
 
 
 [2]
 We considered the post-argument briefs of the parties as to the impact of Johnson on this appeal