Robert RAMIREZ, Plaintiff,

v.

**CITY OF RENO, a governmental entity, Reno Police Department, a department of the City of Reno, Jim Ballard, Patricia Pointer, Earle Beeman, Steve Boland, Tom Reid and Does I–X, Defendants.**

**No. CV–N–95–0093–ECR.**

United States District Court,
D. Nevada.

April 29, 1996.

---

Robert J. Fry, Reno, NV, for Plaintiff.

Patricia A. Lynch, Reno City Attorney, Jill Greiner, Deputy City Attorney, Reno, NV, for Defendants.

## ORDER

EDWARD C. REED, JR., District Judge.

Defendants the City of Reno, its Police Department, and its officers Pointer, Beeman, Boland, Ballard and Reid have moved for summary judgment (Doc. # 16) on Plaintiff Ramirez's federal civil rights and pendent state tort claims.

This action arises out of events which took place in Reno, Nevada on Valentine's Day, February 14, 1993. Shortly after noon on that day, Patricia Pointer, an officer of the Reno Police Department, arrived on the scene of a reported knife attack on one Annette Lawson. The crime had allegedly taken place at the Kermite Street residence of Ted Moraga, Annette Lawson's brother, where Ms. Lawson and her husband, Donald Lawson, had been staying. Officer Pointer was the first police officer to respond to the call.

When Officer Pointer arrived at the scene, she was met by Ted Moraga. Moraga informed Officer Pointer that his sister had been stabbed in the throat, and that her attacker was in the field behind the house. Officer Pointer saw two figures in the field, later identified as Plaintiff Ramirez and Donald Lawson. The two men appeared to be conversing and "tussling" with each other. Officer Pointer attempted to apprehend both men.

Before Mr. Ramirez and Mr. Lawson were brought under Officer Pointer's control, Officers Beeman, Boland and Reid arrived. With their help, Ramirez and Lawson were apprehended and detained. Eventually Mr. Lawson was arrested and charged with attempted murder, and Mr. Ramirez was released.

Exactly two years later, Robert Ramirez instituted this lawsuit. He has alleged violations of his Fourth Amendment right to be free from unreasonable seizures, conspiracy to violate his constitutional right to equal protection of the laws, and actual violation of his equal protection rights. Ramirez has appended to these statutory federal civil rights claims several claims under Nevada law for intentional infliction of emotional distress, assault and battery, and false arrest and false imprisonment.

Defendants seek summary judgment on each and every one of Plaintiff's claims, on the grounds that there remain no genuine issues of material fact to be tried, and that therefore they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ First, Ramirez sues under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable seizures. He claims that his brief detention constituted an unreasonable seizure. By itself, a brief investigatory detention is not unconstitutional. It is well settled that in certain situations a police officer may detain a person for the purpose of investigating possible criminal behavior, even absent the existence of probable cause to arrest that person. *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Pellegrino v. United States,* 73 F.3d 934 (9th Cir.1996).

It appears beyond reasonable dispute that at the moment Officer Pointer began her attempt to exert lawful control over two shadowy figures in a field behind the fresh scene of an attempted murder, she was performing a legitimate investigative function.

*see, e.g., Baker v. Monroe Township,* 50 F.3d 1186 (3d Cir.1995); *United States v. Lloyd,* 36 F.3d 761 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1325, 131 L.Ed.2d 205 (1994). And when, after the arrival of the other officers, Plaintiff was placed in a patrol car, the purpose of his detention was to ensure that he was not criminally connected to the stabbing. When the officers determined that Plaintiff was not a suspect in the crime, he was released. By his own admission, that detention lasted no longer than fifteen to thirty minutes.

■ Because the officers reasonably suspected that Plaintiff had been engaged in criminal activity, his detention was justified, *United States v. Massie,* 65 F.3d 843 (10th Cir.1995), and of reasonable duration, *United States v. Mondello,* 927 F.2d 1463 (9th Cir. 1991).

To the extent that Plaintiff claims his detention alone worked a violation of his Fourth Amendment rights, that claim must, for the reasons just stated, fail as a matter of law. To the extent Plaintiff claims his detention constituted an arrest without probable cause, that claim demands separate inquiry.

■ The Reno Police officers who arrived at the scene and subdued Mr. Ramirez knew only that a woman had just been the victim of a murderous knife attack. Two male individuals stood in the field behind the house. Officer Pointer had drawn her weapon and was attempting to control both Ramirez and Lawson. Until they could identify Lawson, and Lawson alone, as the attacker, they had no way of knowing whether both Ramirez and Lawson were armed, or only one, or neither of them. When a police officer reasonably believes force to be necessary to protect his or her own safety or the safety of others, it is not unreasonable to hold a suspect at gunpoint or to use handcuffs to restrain him. *United States v. Jacobs,* 715 F.2d 1343, 1345–46 (9th Cir.1983); *United States v. Bautista,* 684 F.2d 1286, 1288–89 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). The use of such force during an investigative detention does not convert that detention into an arrest where the circumstances justi-

fy a police officer's fear for her personal safety. *United States v. Buffington,* 815 F.2d 1292, 1300 (9th Cir.1987).

■ The circumstances under which Officers Boland, Beeman and Reid drew their weapons and handcuffed the Plaintiff clearly justified some fear for their safety. Until they could determine which, if either man, had just stabbed Annette Lawson, and until they could make sure neither one was wielding a knife, it could not be said that the use of drawn guns and handcuffs would exceed the bounds of a permissible investigative detention, thereby converting a lawful investigatory detention into an unlawful arrest. *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1320 (9th Cir.1995). As a matter of law, then, Ramirez was never placed under arrest. His claim that his Fourth Amendment right to be free from an unreasonable seizure was violated through an arrest lacking probable cause must accordingly fail.

■ Some manner of detention was plainly justified under the circumstances. Plaintiff, however, claims that in effecting his detention the police officers at the scene employed an unnecessarily and unreasonably high level of physical force. The Fourth Amendment permits police officers to use only that force which is under the circumstances objectively reasonable in the course of effecting an arrest or a detention. *Graham v. Connor,* 490 U.S. 386, 388–89, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989); *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). Where the subject alleges the use of excessive force against him, *the reasonableness of the force employed during his arrest or detention must be measured from the perspective of a reasonable law enforcement officer at the scene of the incident in question. Graham v. Connor,* 490 U.S. at 396, 109 S.Ct. at 1871.

On a motion for summary judgment, the court lacks the authority to determine the truth of a matter in dispute. The affidavits submitted in support of and in opposition to Defendants' motion for summary judgment indicate the existence of material disagreements over precisely how Plaintiff was behaving at the time. Defendants have maintained that they used force only in response to what the police officers perceived as Ramirez's refusal to cooperate with their demands. Plaintiff and his witnesses insist not only that Ramirez cooperated as fully as he was able, but also that the police officers on the scene were aware that Ramirez suffered from serious physical and mental handicaps, which would have explained his allegedly unorthodox comportment, and would have made the use of force unnecessary.

For example, Officer Pointer's affidavit states that "Plaintiff confronted Officer Beeman, while waving a loose handcuff from his left hand.... Plaintiff could have easily used the loose handcuff as a weapon." Pointer Affidavit at 4 lines 10–11, appended as Ex. A to Defendant's Motion for Summary Judgment (Doc. # 16). Ramirez's own affidavit states "I never swung the cuffs at anyone nor did I resist the officers them [sic] at any time during this incident." Ramirez Affidavit at 3 lines 7–8, appended to Plaintiff's Opposition to Motion for Summary Judgment (Doc. # 18). Ted Moraga's affidavit states, "At no time did Robert Ramirez slip out of one of his handcuffs or flail it in the air at the officers." Moraga Affidavit at 4 lines 20–21 (Doc. # 19).

Officer Pointer's affidavit states that Plaintiff failed to obey her command that he refrain from approaching her. Pointer Affidavit at 2 lines 24–25. Plaintiff maintains he did stop when ordered by Pointer to do so. Ramirez Affidavit at 2 line 12. Officer Pointer states that she then instructed Ramirez to approach her, but that Ramirez was "uncooperative." Pointer Affidavit at 3 lines 10–12. She claims that when Officer Beeman arrived, together they "asked Plaintiff to please comply with the directions ... but Plaintiff continued to be uncooperative." *Id.* at lines 13–15. Ramirez claims that Officer Pointer directed him to approach her, and that then Officer Beeman told him to get down on the ground. "At this point I did not know which of the officers [sic] directions to follow." Ramirez Affidavit at 2 lines 15–17.

It was apparently at this point that the police officers first used direct physical force against Plaintiff. The parties and their wit-

nesses disagree over the tenor of Plaintiff's behavior. Defendants paint Ramirez as belligerent and uncooperative, raising his voice, threatening to sue the police officers, resisting their attempts to subdue him, menacing them by swinging one handcuff on the end of the chain. Plaintiff and his witness Moraga portray Ramirez as cooperative and obedient, if somewhat confused. The parties, predictably, characterize the physical force applied to Plaintiff's person in profoundly discrepant terms.

■ It is therefore not possible at this stage to make any reasoned determination either as to the precise circumstances which attended the use of force against Plaintiff, or as to the degree of force the police eventually used against him. However, although the question of the reasonableness of the force used against the plaintiff in a Fourth Amendment excessive force case is usually reserved to the jury, the court may nonetheless grant a defense motion for summary judgment where, viewing the evidence in the light most favorable to the plaintiff, the force used appears to have been reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995); *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.1992).

Plaintiff claims never to have offered any resistance to any of the officers present at the scene. He maintains that he complied with their instructions, as far as he was able given his physical limitations and given the apparent conflict between Officer Pointer's commands and those of the other officers. The non-party eyewitnesses to the incident, Ted Moraga and Moraga's neighbor Clarence Casey, an off-duty officer of the Nevada Highway Patrol who happened to be present, have sworn that prior to the Reno police officers' use of force against Plaintiff, they were aware (a) that Plaintiff suffered from physical and mental disabilities and (b) that

he had no involvement with the crime being investigated.[1]

Plaintiff's version of the precise sequence of events are as follows: He stopped moving when told to halt by Officer Pointer. At that point Officers Beeman and Reid arrived. Officer Pointer then directed Plaintiff to come forward with his hands raised. Officer Beeman then directed Plaintiff to get down on the ground. Within seconds of receiving these conflicting instructions from the officers—who had drawn their weapons and had trained them on Plaintiff—one the police officers seized Ramirez's left arm and pulled the arm behind Ramirez's back. He yelled, "What the hell are you doing?," and was then struck "a massive blow" from behind.

One of the police officers then began to place Plaintiff in handcuffs. Ramirez states that at this point he was experiencing "unbearable" pain in his shoulder, back and wrist. He was then pushed down onto the ground, face first, into a pool of water. One officer kneeled on the base of Plaintiff's neck, so that he was, in effect, being drowned. In order to be able to breathe, Ramirez pushed himself out of the water with his free right arm, at which point the police officers pulled him out of the water and dragged him face down through some loose gravel, lacerating the skin on Ramirez's face. He was then handcuffed and placed in a police patrol car for between fifteen and thirty minutes. At no time was Ramirez questioned by the police or searched for any weapons. Ramirez Affidavit at 2–3 appended to Plaintiff's Opposition to Motion for Summary Judgment (Doc. # 18).

■ Viewing this evidence in a light most favorable to Plaintiff, it is not possible to conclude as a matter of law that the force used was reasonable under the circumstances. *Alexander v. County of Los Angeles*, 64 F.3d 1315, a 1322–23 (9th Cir.1995). Therefore, because the facts regarding (a)

1. Officer Casey was briefly suspended from duty following an investigation of his behavior at the crime scene by the Nevada Division of Investigation (NDI). According to the version of the events supplied by NDI in the course of the disciplinary proceedings against Officer Casey, Casey himself "repeatedly told Officer Pointer that Ramirez had physical and mental problems

that prevented him from complying with her instructions. [Casey] kept telling Officer Pointer that Ramirez had nothing to do with the crime." Specificity of Disciplinary Charges against Special Officer Clarence Casey, at 2, appended as Ex. A to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. # 18).

Plaintiff's behavior and demeanor and (b) the actual force employed by the police officers in restraining him remain in dispute, those factual disputes must be resolved by the trier of fact, rather than on summary judgment. *See Hopkins v. Andaya,* 958 F.2d 881 (9th Cir.1992); *see also Estwick v. City of Omaha,* 9 F.3d 56 (8th Cir.1993); *Dean v. City of Worcester,* 924 F.2d 364 (1st Cir.1991).

Nor is it possible to dispose of Plaintiff's excessive force claim on the grounds of qualified immunity. Despite some conflict in Ninth Circuit authority over the contours of qualified immunity in the context of an excessive force claim,[2] it appears to this court impossible to disentangle the merits of a Fourth Amendment excessive force claim, focusing as they do on the objective legal reasonableness of the force used, with the qualified immunity defense to that claim.

 Qualified immunity is theoretically available to governmental defendants in an excessive force claim. *Scott v. Henrich,* 39 F.3d 912 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). There inhere, however, labyrinthine conceptual difficulties in asserting qualified immunity to this particular type of claim. As a general proposition, qualified immunity shields public officers and agency from liability, even though their actions may have violated the plaintiff's constitutional rights, if those unconstitutional acts "did not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

 A plaintiff's Fourth Amendment right against the use of excessive force upon her is violated where the force used was unreasonable, when viewed in the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 388–89, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989); *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994).

Qualified immunity does not become relevant until the plaintiff pleads facts which, if proved, would establish a constitutional violation. The governmental defendant is then nevertheless entitled to a verdict in her favor if the decisional or statute law rendering her conduct unconstitutional was not clearly established at the time of the incident in question, or if a reasonable person in the position of the defendant would not have been aware been aware of such law. *Mendoza v. Block,* 27 F.3d 1357 (9th Cir.1994). In the context of an excessive force claim, the qualified immunity defense takes on a paradoxical quality: The defendant must argue, in essence, that although the force she used against the plaintiff was in fact *un*reasonable, that a reasonable person in the defendant's position could nonetheless believed the degree of force employed to have been reasonable.

This intrinsic analytical incompatibility of an excessive form claim with a qualified immunity defense has led appellate panels in this judicial circuit to observe that because both the qualified immunity defense and the underlying excessive force claim require evaluation, from an objective standpoint, of the "reasonableness" of the degree of force used upon the plaintiff, the two lines of inquiry converge. *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.1995); *Hopkins v. Andaya,* 958 F.2d 881, 885 n. 3 (9th Cir.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995).[3] Some Ninth Circuit panels have, without *in haec verba* declaring the two issues to be inseparable, nevertheless blended them together. *See, e.g., Mendoza v. Block, supra,*

---

2. *See McRae v. Tena,* 914 F.Supp. 363, 366 (D.Ariz.1996) (Silver, J.) (noting apparent intracircuit conflict between Ninth Circuit excessive force cases equating inquiry on merits with qualified immunity analysis, and other Ninth Circuit cases insisting that the two lines of inquiry are distinct).

3. The Supreme Court hinted in *Graham v. Connor* that in a Fourth Amendment excessive force claim the inquiry into the objective "reasonableness" of the degree of force used by the defendant closely resembles the inquiry, for the purposes of the qualified immunity defense, into the objective "reasonableness" of the defendant's belief that his conduct was not unconstitutional. But because the Court was not asked to review the issue of qualified immunity, it had no occasion to formulate a definitive ruling on the problem. *Graham v. Connor,* 490 U.S. 386, 399 n. 12, 109 S.Ct. 1865, 1873 n. 12, 104 L.Ed.2d 443 (1989).

at 1362 (applying *Graham v. Connor*'s excessive force "reasonableness" test to defendants' qualified immunity defense).

■ This is not to say that because a seizure may be "unreasonable" within the meaning of the Fourth Amendment, no defendant should ever be entitled to qualified immunity from such a claim. *See Hammer v. Gross*, 932 F.2d 842, 851 (9th Cir.) (recognizing distinction between Fourth Amendment "unreasonableness" and qualified immunity "unreasonableness," and citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), *cert. denied*, 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). For example, defendant officials who make an arrest without a warrant and without probable cause, therefore violating the Fourth Amendment's prohibition on unreasonable searches and seizures, are nonetheless entitled to qualified immunity if their belief that probable cause existed was reasonable. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

■ By contrast, a seizure is constitutionally unreasonable on the grounds of excessive force when the force used was legally "unreasonable," i.e. where the totality of the circumstances (including the severity of the crime, the threat the suspect posed to the safety of police or others, and any attempt by the suspect to resist of evade arrest) do not justify the force employed. That factual judgment must be made from the perspective of a reasonable officer at the scene. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985); *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991). If a reasonable police officer in the position of the defendant would not, as a matter of law, be justified in using the degree of force alleged by the plaintiff, it follows that that hypothetical reasonable official could not reasonably have thought otherwise. Therefore, because the court cannot, assuming the truth of Plaintiff's version of the facts, find that the defendants in this case did not violate Plaintiff's right not to be subjected to excessive force, neither can it conclude that reasonable officers in the position of the defendants could have believed themselves constitutionally authorized to use the amount of force Plaintiff claims was used against him.

■ In addition to his Section 1983 claim for violation of his Fourth Amendment rights, Plaintiff also claims a violation of his Fourteenth Amendment right to equal protection of the laws, citing 42 U.S.C. § 1981. Section 1981 prohibits only intentional discrimination based on the plaintiff's race. *United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 23 L.Ed. 588 (1875); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480 (9th Cir.1995); *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303 (9th Cir.1992). Nowhere in the complaint does Mr. Ramirez allege any racial discrimination. Defendants are therefore entitled to judgment on Plaintiff's Section 1981 claim.

■ For similar reasons, Plaintiff's federal conspiracy claim under 42 U.S.C. 1985(3) miscarries: That statute, as construed by the United States Supreme Court, protects only against discrimination founded upon invidious, class-based animus. *United Bhd. of Carpenters and Joiners Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Assuming, without any authority for the assumption, that Plaintiff's status as an individual with physical and psychological disabilities could bring him within a protected class under Section 1985(3), he still fails to allege any intent on the part of Defendants to discriminate against him on that basis. He does argue that the defendant police officers knew he was disabled, but "nevertheless violated his constitutional rights." Plaintiff's Opposition to Summary Judgment at 8 (Doc. # 18). Such an allegation is insufficient: To make out a valid claim under Section 1985(3) a plaintiff must allege a deprivation "because of" her membership in a protected class, not, as Plaintiff here has done, merely "in spite of" that membership. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085 (2d Cir.1993), *cert. denied*, —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *City of Omaha Empl. Betterment Ass'n v. City of Omaha*, 883 F.2d 650 (8th Cir.1989); *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743

(10th Cir.1980), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). Defendants are therefore entitled to judgment on Plaintiff's claim under 42 U.S.C. § 1985(3).

■ Defendants also move for summary judgment on Plaintiff's pendent state law claim for intentional infliction of emotional distress. In Nevada such a claim requires proof (1) that the defendant's conduct was "extreme and outrageous," (2) that the defendant either intended to cause or recklessly disregarded the risk of causing emotional distress, (3) that the plaintiff actually suffered severe or extreme emotional distress, and (4) that the distress was actually or proximately the result of the defendant's conduct. *Nelson v. City of Las Vegas,* 99 Nev. 548, 665 P.2d 1141, 1145 (1983).

■ Plaintiff presents scant evidence that he suffered severe or extreme emotional distress. His affidavit states that as a result of his traumatization at the hands of Defendants he "was embarrassed and lost sleep for several months." Ramirez Affidavit at 3 lines 17–18, appended to Plaintiff's Opposition to Motion for Summary Judgment (Doc. # 18). Embarrassment and sleep loss, without more, are insufficient harm upon which to predicate a claim for intentional infliction of emotional distress. *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459, 462 (1993). But Plaintiff has presented substantial evidence that Defendants bruised and manhandled Plaintiff in the course of detaining him. Plaintiff has also produced evidence, in the form of Ted Moraga's affidavit, and Clarence Casey's disciplinary record, *see supra* note 2, that the Defendants knew at the time they knocked Plaintiff face-first into a puddle that he (a) was not involved in the knife attack on Ms. Lawson and (b) that he was physically and mentally disabled. Viewing the evidence in the light most favoring Plaintiff, the court cannot in good conscience conclude that Defendants are entitled to judgment on the emotional distress claim. *Branda v. Sanford,* 97 Nev. 643, 637 P.2d 1223, 1227 (1981).

■ On the other hand, Plaintiff's false imprisonment claim is without merit. In Nevada, false imprisonment is the confinement or detention of another person without sufficient legal authority. Nev.Rev.Stat. § 200.460. A law enforcement officer is authorized by state statute to detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime. Nev.Rev.Stat. § 171.123. The court has already determined that the circumstances under which the defendant police officers arrived at the scene of the incident in question provided ample grounds to suspect, at least temporarily, that Plaintiff might in some way have been involved in the knife attack on Annette Lawson. It is therefore inconceivable that the defendant police officers were not authorized to detain Plaintiff under state law. Defendants are accordingly entitled to judgment on the false imprisonment claim.

■ Plaintiff's false arrest claim is of even less substance than his false imprisonment claim: There was no arrest. State law permits brief non-arrest detention for the purpose of ascertaining an individual's identity and for the purpose of explaining any apparent "suspicious circumstances surrounding his presence abroad." Nev.Rev. Stat. § 171.123(2). Such detention may not exceed sixty minutes' duration, after which the person detained must be released or arrested. *Id.* at (3). Plaintiff admits his detention lasted for at most thirty minutes. As the court has determined by reference to federal law, *see supra* page 686, Plaintiff was never under arrest. Nor was he under arrest within the meaning of Nevada's detention and arrest statutes. Defendants are accordingly entitled to judgment on Plaintiff's false arrest claim.

■ Finally, Defendants seek summary judgment on Plaintiff's pendent state law assault and battery claim. The court's research has uncovered no decision by a Nevada court limning the contours of an assault and battery claim against a law enforcement officer for physical force employed in the exercise of her sworn duty. Plainly police officers in Nevada as elsewhere enjoy a limited privilege to perform acts required by their positions as guardians of the public peace which if performed by private citizens might constitute battery. But for the limits of that

privilege the court must look to the law of another jurisdiction. The law of Nevada's neighbors, and the law of other American jurisdictions, provide a reasonable guide.

Peace officers have long been liable at common law for the use of unnecessary or excessive force in the course of arresting or detaining a suspect. *Dixon v. State,* 101 Fla. 840, 132 So. 684 (1931); *State v. Prlja,* 57 Mont. 461, 189 P. 64 (1920). Police officers are privileged to use that amount of force which reasonably appears necessary, and are liable for battery to the extent they use more force than is reasonably necessary. *Boyles v. City of Kennewick,* 62 Wash.App. 174, 813 P.2d 178; *review denied,* 118 Wash.2d 1006, 822 P.2d 288 (1991); *Downs v. Garay,* 106 N.M. 321, 742 P.2d 533 (Ct.App.1987); *Flowers v. Campbell,* 81 Or.App. 437, 725 P.2d 1295 (1986); *Kimbley v. City of Green River,* 663 P.2d 871 (Wyo.1983); *Breese v. Newman,* 179 Neb. 878, 140 N.W.2d 805 (1966). The court concludes that Nevada's courts would adhere to this general rule.

The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances. Because the circumstances attending the defendant police officers, and the precise amount of force they used on Plaintiff remain in dispute, Defendants are not entitled to summary judgment on that claim.

For the foregoing reasons, *IT IS THEREFORE ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY GRANTED* with respect to Plaintiff's claims of intentional discrimination under 42 U.S.C. § 1981 and conspiracy under 42 U.S.C. § 1985(3).

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY GRANTED* with respect to Plaintiff's claim under 42 U.S.C. § 1983 that his detention worked a denial of his Fourth Amendment right to be free from unreasonable seizures.

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY GRANTED* with respect to Plaintiff's claim under 42 U.S.C. § 1983 that his detention constituted an arrest without warrant or probable cause, in violation of Plaintiff's right under the Fourth Amendment to be free from unreasonable seizures.

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY DENIED* with respect to Plaintiff's claim under 42 U.S.C. § 1983 that the Defendant police officers used excessive force against him, in violation of Plaintiff's right under the Fourth Amendment to be free from unreasonable seizures.

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) on the basis of qualified immunity is *HEREBY DENIED.*

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY GRANTED* respect to Plaintiff's pendent state law claims for false arrest and false imprisonment.

*IT IS FURTHER ORDERED* that Defendants' Motion for Summary Judgment (Doc. # 16) is *HEREBY DENIED* with respect to Plaintiff's pendent state law claims for intentional infliction of emotional distress and for assault and battery.